AO 442    (Rev. 5/93) Warrant for Arrest

1:14MJ86A

# UNITED STATES DISTRICT COURT

_____WESTERN_____ District of _____PENNSYLVANIA_____

UNITED STATES OF AMERICA

V.

DOHERTY KUSHIMO

**WARRANT FOR ARREST**

Case Number: 14-12 ERIE

SEALED INDICTMENT

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest _____DOHERTY KUSHIMO_____
Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

X Indictment  ☐ Information  ☐ Complaint  ☐ Order of court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with  (brief description of offense and 'in violation of Title __ of U.S.C., Section(s) __')

COUNT 1 - 18 USC 1349 - CONSPIRACY TO COMMIT FRAUD
COUNTS 3-7, 9,10,12,13 - 18 USC 1028(a)(1) - AGGRAVATED IDENTITY THEFT

RECEIVED US MARSHAL 2014 MAR 12 AM 10:35 ERIE, PA

SUSAN D. PARMETER                           Deputy Clerk
Name of Issuing Officer                     Title of Issuing Officer

_Signature: Susan D. Parmeter_               MARCH 11, 2014     Erie, PA
Signature of Issuing Officer                 Date and Location

Bail fixed at $ to be set by US Magistrate Judge   by _____
                                                      Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

TOTAL P.001

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) Criminal No. 14-12    Erie |
| DOHERTY KUSHIMO<br>SABURI ADEYEMI<br>ABIODUN BAKRE<br>ADETUNJI GBADEGESHI | ) (18 U.S.C. §§1349 and<br>) 1028A(a)(1))<br>) (Under Seal) |

# I N D I C T M E N T

FILED
MAR 1 1 2014
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANI-

The grand jury charges:

## INTRODUCTION

At all times material to this Indictment:

1. Defendant DOHERTY KUSHIMO was a resident of Providence, Rhode Island.

2. Defendant SABURI ADEYEMI was a resident of Memphis, Tennessee.

3. Defendant ABIODUN BAKRE was a resident of Ozone Park, Borough of Queens, New York.

4. Defendant ADETUNJI GBADEGESHI was a resident of Rosedale, Borough of Queens, New York.

5. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for enforcing and administering the tax laws of the United States and collecting taxes owed to the United States.

6. The standard form used by United States citizens to file individual federal income tax returns was the Form 1040. On

a Form 1040, taxpayers were required to report, among a variety of items, their wages, withholdings and applicable tax credits. Based on the information reported in Form 1040s, the United States Treasury either required taxpayers to pay additional taxes or refunded excess tax payments to taxpayers.

7. The IRS allowed taxpayers to file their tax returns via the United States mail, electronically ("e-file") with commercial tax software such as TurboTax, or electronically through a paid tax preparer.

8. The United States Treasury paid tax refunds in the form of United States treasury checks sent to the taxpayer via the United States Postal Service, or direct deposit wire transfers into the bank account(s) or debit card(s) designated by the taxpayer on their federal tax return.

9. A "means of identification" was any name or number that may be used, alone or in conjunction with other information, to identify a specific individual, including but not limited to, a name, Social Security number, driver's license number or date of birth.

### THE CONSPIRACY AND ITS OBJECTS

10. From in and around December 2005, and continuing thereafter until in and around March 2014, in the Western District of Pennsylvania, and elsewhere, the defendants, DOHERTY KUSHIMO, SABURI ADEYEMI, ABIODUN BAKRE, ADETUNJI GBADEGESHI and others, both known and unknown to the grand jury, knowingly, willfully and unlawfully conspired and agreed together to commit the crime of wire

fraud, in violation of Title 18, United States Code, Section 1343.

**MANNER AND MEANS OF THE CONSPIRACY**

11. It was part of the conspiracy that the Co-Conspirators unlawfully obtained the means of identification, including, but not limited to, names, Social Security numbers, and dates of birth, of thousands of individuals.

12. It was further a part of the conspiracy that the Co-Conspirators shared the stolen means of identification with each other using email and other means of communication.

13. It was further a part of the conspiracy that the Co-Conspirators filed, or caused to be filed with the IRS, false and fraudulent Form 1040s using the unlawfully obtained means of identification. The fraudulent Form 1040s were completed using falsified information on the tax return including falsified wages earned, taxes withheld, allowable tax credits and other data. The fraudulent Form 1040s were drafted to make it appear as though the tax return filers, whose means of identification had been stolen, were entitled to tax refunds.

14. It was further a part of the conspiracy that the Co-Conspirators valued identities of individuals who were unlikely to file a legitimate federal tax return ("clean" stolen identities) to use for the submission of false and fraudulent Form 1040s to the IRS. By using "clean" stolen identities, the Co-Conspirators sought to minimize their risk of detection because the use of "clean" stolen identities would reduce the occasions where the Co-Conspirators filed a fraudulent tax return using a stolen identity after the actual

taxpayer had already filed a legitimate tax return, thereby possibly putting the IRS on notice that a fraud was occurring.

15. It was further a part of the conspiracy that the Co-Conspirators procured false identification documents, including but not limited to, driver's licenses and Social Security cards, that were used to open bank accounts at numerous financial institutions throughout the United States, including but not limited to, Widget Financial (formerly Erie General Electric Federal Credit Union, Erie, Pennsylvania), PNC Bank (Pittsburgh, Pennsylvania), Treasury Department Federal Credit Union (Washington, D.C.), Air Force Academy Credit Union (Colorado), Pennsylvania State Employees Credit Union (Harrisburg, Pennsylvania), Red Canoe Credit Union (Longview, Washington), Rutgers Federal Credit Union (New Brunswick, New Jersey) Lake Michigan Federal Credit Union (Grand Rapids, Michigan) and Windward Credit Union (Oahu, Hawaii) using the stolen means of identification that the Co-Conspirators had obtained.

16. It was further a part of the conspiracy that when the fraudulent bank accounts were opened by the Co-Conspirators, addresses, phone numbers and email accounts were provided to the financial institutions which were different than those actually belonging to those individuals whose means of identification had been stolen. The fraudulent addresses, phone numbers and email accounts were provided so that those individuals whose identities had been stolen would not be notified of the fraud. The fraudulent addresses, phone numbers and email addresses were either under the control of the Co-Conspirators or were accessible to the

Co-Conspirators so that it would be more difficult for the financial institutions to discover the fraud.

17. It was further a part of the conspiracy that when opening the fraudulent bank accounts, the Co-Conspirators verified the false addresses listed on the fraudulent account applications by providing the banks with false and altered documents, such as fake utility statements.

18. It was further a part of the conspiracy that these fraudulently opened bank accounts were then used as repositories for the fraudulently obtained federal tax refunds.

19. It was further a part of the conspiracy that the Co-Conspirators then removed the tax refunds from the fraudulently opened bank accounts under their control, spent a portion of the ill-gotten funds, deposited some of the illegally obtained funds into their legitimate personal bank accounts, sent a portion of the illegal proceeds to Nigeria and dispersed the funds in other unknown ways.

20. It was further a part of the conspiracy that the Co-Conspirators obtained credit cards using the stolen means of identification that they had obtained. The Co-Conspirators then shared these credit cards with each other and even used the stolen identity credit cards in furtherance of the conspiracy. For example, Defendant DOHERTY KUSHIMO used a credit card obtained using the means of identification of R.C. to purchase Internet anonymizing software.

21. It was further a part of the conspiracy that the Co-Conspirators also obtained, via the Internet, credit card numbers

with the corresponding security codes, shared these credit card numbers and security codes with each other and used these unlawfully procured credit card numbers without the permission of the lawful holders of the credit cards.

22. It was further a part of the conspiracy that relative to the illegal procurement and use of credit cards and credit card numbers, the Co-Conspirators sought individuals with good credit so as to ensure that the use of credit in these individuals' stolen identities would be more fruitful. In seeking victims with good credit, the Co-Conspirators checked the credit of numerous individuals by accessing, via the Internet, the victims' personal credit history information on credit reporting websites and publicly available databases.

23. It was further a part of the conspiracy that the Co-Conspirators conducted their activities and transactions in a manner designed to conceal their criminal activity and frustrate law enforcement, including: (a) e-filing fraudulent tax returns using Internet based services like TurboTax by using the names of identity theft victims; (b) using coded and ambiguous language to refer to various aspects of the conspiracy; (c) avoiding the use of their real names and instead referring to each other by nicknames or coded names; (d) using prepaid cell phones (also known as "drop phones") which they changed on a regular basis; (e) obtaining and using software which allowed them to remain anonymous on the Internet; (f) using multiple email accounts that were not in their own names and changing email accounts regularly; and (g) using wireless air

cards to connect to the Internet and avoiding the use of static Internet connections so as to frustrate law enforcement's ability to pinpoint the location of their Internet use.

24. In total, the conspiracy to commit wire fraud caused approximately 2,400 fraudulent Form 1040 federal income tax returns to be filed with the United States Treasury, sought more than approximately $21 million in tax refunds and caused actual losses to the United States Treasury of approximately $10 million.

In violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH THIRTEEN

The grand jury further charges:

25. Paragraphs 1 through 24 are realleged and incorporated herein as if fully set forth.

26. On or about the dates set forth below, within the Western District of Pennsylvania and elsewhere, the defendants listed below, during and in relation to the felony violation of Title 18, United States Code, Section 1349 (conspiracy to commit wire fraud), as set forth in Count One, did knowingly transfer, possess and use, and cause to be transferred, possessed and used, without lawful authority, a means of identification of another person, that is, the name and Social Security number of another person (listed below by initials only).

| COUNT | DEFENDANTS | DATE | INDIVIDUAL |
|---|---|---|---|
| TWO | BAKRE | March 2011 | J.H. |
| THREE | KUSHIMO BAKRE | November 2011 | R.B. |
| FOUR | KUSHIMO BAKRE | December 2011 | D.M.L. |
| FIVE | KUSHIMO BAKRE | December 2011 | J.H. |
| SIX | KUSHIMO BAKRE | January 2012 | M.P. |
| SEVEN | KUSHIMO | April 2012 | D.M. |
| EIGHT | BAKRE | July 2012 | R.T. |
| NINE | KUSHIMO | July 2012 | D.A.W. |
| TEN | KUSHIMO BAKRE | August 2012 | D.W.M |
| ELEVEN | BAKRE | September 2012 | M.L.S. |
| TWELVE | KUSHIMO | September 2012 | D.K. |
| THIRTEEN | KUSHIMO | October 2012 | J.L. |

In violation of Title 18, United States Code, Section 1028A(a)(1).

A True Bill,

**REDACTED**

DAVID J. HICKTON
United States Attorney
PA ID No. 34524

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 14-12  Erie |
| | ) | |
| ✓DOHERTY KUSHIMO | ) | (Under Seal) |
| SABURI ADEYEMI | ) | |
| ABIODUN BAKRE | ) | |
| ADETUNJI GBADEGESHI | ) | |

**FILED**

MAR 1 1 2014

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

INDICTMENT MEMORANDUM

AND NOW comes the United States of America, by its attorneys, David J. Hickton, United States Attorney for the Western District of Pennsylvania, and Christian A. Trabold, Assistant United States Attorney for said District, and submits this Indictment Memorandum to the Court:

I. THE INDICTMENT

A Federal Grand Jury returned a thirteen-count Indictment against the above-named defendants for alleged violations of federal law:

| COUNT | OFFENSE/DATE | TITLE/SECTION | DEFENDANT(S) CHARGED |
|---|---|---|---|
| 1 | Conspiracy to commit fraud From in and around December 2005 to in and around March 2014 | 18 USC §1349 | Kushimo Adeyemi Bakre Gbadegeshi |

| COUNT | OFFENSE/DATE | TITLE/SECTION | DEFENDANT(S) CHARGED |
|---|---|---|---|
| 2-13 | Aggravated identity Theft In and around March 2011 to in and around October 2012 | 18 USC §1028A(a)(1) | Kushimo Bakre |

## II. ELEMENTS OF THE OFFENSES

### A. As to Count 1:

In order for the crime of conspiracy to commit fraud, in violation of 18 U.S.C. §1349, to be established, the government must prove all of the following essential elements beyond a reasonable doubt:

1. That the conspiracy, agreement, or understanding to commit violations of 18 U.S.C. § 1343 as described in the Indictment, was formed, reached, or entered into by two or more persons.

2. At some time during the existence of the conspiracy, agreement or understanding, the defendant knew the purpose of the agreement, and, with that knowledge, then deliberately joined the conspiracy, agreement or understanding.

> O'Malley, Grenig and Lee, 2 Federal Jury Practice and Instructions § 31.03 (2002) (revised to exclude overt act requirement, see Whitfield v. United States, 125 S.Ct. 687, 691 (2005); United States v. Shabani, 513 U.S. 10, 16 (1994)).

**B. As to Counts 2 through 13:**

In order for the crime of aggravated identity theft, in violation of 18 U.S.C. §1028A(a)(1), to be established, the government must prove all of the following essential elements beyond a reasonable doubt:

1. That the defendant committed a felony violation of a statute listed in 18 U.S.C. §1028A(c), other than aggravated identity theft, in violation of 18 U.S.C. §1028A(a)(1); and

2. That the defendant, during and in relation to said felony violation, knowingly transferred, possessed or used, without lawful authority, a means of identification of another person.

18 U.S.C. §1028A(a)(1).

### I. PENALTIES

**A. As to Count 1: Conspiracy to commit fraud (18 U.S.C. §1349):**

1. Imprisonment of not more than twenty (20) years (18 U.S.C. §§1343 and 1349).

2. A fine not more than the greater of:

    (1) $250,000 (18 U.S.C. §3571(b)(3))

<u>or</u>

(2) an alternative fine in an amount not more than the greater of twice the gross pecuniary gain to any person or twice the pecuniary loss to any person other than the defendant, unless the imposition of this alternative fine would unduly complicate or prolong the sentencing process (18 U.S.C. §3571(d)).

3. A term of supervised release of not more than three (3) years (18 U.S.C. §§ 3559 and 3583).

4. Any or all of the above.

B. **As to Counts 2 through 13: Aggravated identity theft (18 U.S.C. §1028A(a)(1):**

1. A term of imprisonment of two years to run consecutively with any other term imposed, except as stated in 18 U.S.C. §1028A(b)(4) (18 U.S.C. §1028A(a)(1)).

2. A fine of $250,000 (18 U.S.C. §3571(b)(3)).

3. A term of supervised release of not more than one (1) year (18 U.S.C. §3583).

4. Any or all of the above.

### IV. MANDATORY SPECIAL ASSESSMENT

A mandatory special assessment of $100.00 must be imposed on each count upon which the defendant is convicted, pursuant to 18 U.S.C. §3013.

## V. **RESTITUTION**

Restitution may be required in this case as to Counts One through Thirteen, together with any authorized penalty, as part of the defendant's sentence pursuant to 18 U.S.C. §§3663, 3663A and 2259.

## VI. **FORFEITURE**

Not applicable in this case.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney

CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013